IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO CESAR SOSA-ESCOTO,**<br>**Petitioner**<br><br>**v.**<br><br>**JESSICA SAGE, Warden of FCI Lewisburg,**<br>**Respondent** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **No. 3:26cv1574**<br><br>**(Judge Munley)** |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM ORDER**

Julio Cesar Sosa-Escoto is a native of Honduras in the custody of Immigration and Customs Enforcement at FCI-Lewisburg. Previously, the court granted Sosa-Escoto's petition for writ of habeas corpus under 28 U.S.C. § 2241 and ordered that he be provided with a bond hearing in accordance with certain conditions. Sosa-Escoto v. Sage, No. 3:26CV1574, 2026 WL 2087289, at *4 (M.D. Pa. July 20, 2026). Otherwise, according to the memorandum order, the petitioner would be released. Id.

Following denial of bond by an immigration judge in the Department of Justice's Executive Office of Immigration Review, Sosa-Escoto filed a motion to enforce those conditions. (Doc. 13). His motion asserts that he experienced additional due process violations during his bond hearing. Specifically, he argues that he was not permitted to give testimony or respond to the alleged

charges against him. Id. ¶ 4. He is critical of the IJ for admitting documents filed by DHS because they lacked a certificate of service. Id. ¶ 5. Sosa-Escoto also contends that the IJ gave undue weight to his alleged criminal history. Id. ¶ 6.

Sosa-Escoto's brief in support argues that he is proceeding "pro se because of the inefficiency of his counsel," who did not "force the government to provide petitioner with an adequate and competent interpreter during the individualized hearing." (Doc. 14 at ECF p. 2). He further contends that the detainees at FCI-Lewisburg "are under lordship of [IJ] Jacob Addicott" who has allegedly denied release on bond to "99.99%" of petitioners who have had bond hearings ordered by district court judges. Id. at ECF p. 4.

The government opposes the motion and raises several arguments, including a challenge to the court's jurisdiction to hear the motion. (Doc. 16 at ECF pp. 7–11). By law, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). But despite this jurisdiction-stripping language, § 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). Additionally, the Third Circuit has never used § 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir.

2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received.") (emphasis removed); Sylvain v. Att'y Gen., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[Section 1226(e)] does not limit habeas jurisdiction over constitutional claims or questions of law.") (alteration in original)). Further, in non-precedential opinions, the Third Circuit has recognized such jurisdiction. Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair.") (citations omitted); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis."). Consequently, this court has jurisdiction to determine whether Sosa-Escoto received a fundamentally fair bond hearing.[1]

---

[1] The government further argues that Sosa-Escoto failed to exhaust his administrative remedies. (Doc. 6 at 7–8). Administrative exhaustion is prudential in this case, i.e., judge-made and discretionary. Under the case law, prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). "But even when courts might otherwise require exhaustion, they may excuse it when, for instance, 'waiver, estoppel, tolling or futility' applies." Id. (quoting Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)). The

After careful review of the transcripts, IJ Addicott presided over a fundamentally fair proceeding. (Docs. 16-2, 16-3). That is, there are "three pillars" of a fair hearing: "(1) the IJ engages in fact-finding based on the record made at a hearing and disclosed to the noncitizen; (2) the noncitizen has the opportunity to make arguments and present evidence on his/her own behalf; and (3) the IJ makes an individualized determination of the noncitizen's claims." B.C. v. Att'y Gen. U.S., 12 F.4th 306, 313 (3d Cir. 2021) (citing Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 386 (3d Cir. 2001)).

All three pillars remain standing here. During the bond hearing, DHS moved to introduce: 1) this court's prior memorandum order; 2) the petitioner's removal order; 3) petitioner's rap sheets; 4) three arrest reports involving the petitioner; 5) an I-213 form about the petitioner; 6) previous IJ orders; and 7) a letter from the Nassau County Police Department. (Doc. 16-3 at ECF p. 3–5). Through counsel, Sosa-Escoto objected to admission of these documents for not containing a certificate of service. Id. at 6. The objections were overruled, as the IJ noted that this court had placed the burden on DHS for the bond proceedings. Id. at ECF p. 7. The IJ further noted that petitioner was served with the exhibits that were made viewable to his counsel via the immigration court's electronic

---

court waives administrative exhaustion in this instance for all arguments that do not involve reweighing of the evidence presented to the IJ.

system. Id. at 6. Petitioner's counsel was afforded time to further review those documents, which, by petitioner's counsel's response, was not necessary. Id. at ECF pp. 6–7. The court sees no due process violation under these circumstances. Rather, the opposite is true. It would be fundamentally unfair for a danger or flight risk determination to be made without a record for the IJ to consider.

As for the evidence and argument pillar, the immigration court continued the bond hearing so Sosa-Escoto's counsel could be prepared for proceedings after receiving late notice. (Doc. 16-2 at ECF pp. 2–3). Furthermore, petitioner had an opportunity to make argument after DHS highlighted his criminal history and numerous aliases. (Doc. 16-3 at ECF pp. 7–8). Instead of addressing those issues head on, petitioner's counsel continued to focus on whether documents were properly submitted to the IJ. Id. To the extent that Sosa-Escoto asserts he should have been permitted to testify, that request was not made to the IJ on the record. The court cannot grant relief based on the petitioner's failure to make a request to the IJ in the first instance.

Regarding the required individualized determination, IJ Addicott explained:

> [A]fter review of the documents and considering the arguments of counsel, the Court is going to deny bond. It does find that the Department has met its burden to show by clear and convincing evidence that the respondent poses a danger and a flight risk, and this is because of the numerous run-ins with law enforcement, as noted in the

> record. And many of these documents were provided in the removal proceedings, which the immigration judge who denied the respondent's applications for relief had noted in his decision denying in part based on the lack of good moral character under the catchall provision in 101(f). The Court is concerned about the incidents described in the arrest reports received and finds that there is -- that the Department has established by clear and convincing evidence that respondent poses a danger. The Court is reviewing what the [i]mmigration judge had considered, as well as -- in its decision, as well as the arrest reports filed in this case. Furthermore, it appears the respondent's applications for relief were denied. And while the respondent has affected an appeal, the various run-ins with law enforcement throughout removal proceedings up until recently show that the respondent has a clear disregard for the law, and that is a flight risk factor that this Court consider[s]. And the only relief before the Court today is a pending appeal. Upon review of the record, the Court will deny bond for those reasons.

Id. at ECF p. 11.

IJ Addicott also explained his decision to Sosa-Escoto directly through an interpreter and advised how the petitioner could appeal the bond determination. Id. at ECF pp. 12–13.

Consequently, given the petitioner's criminal history, which the court has previously reviewed, (Doc. 6-7), the IJ made individualized danger and flight risk assessments without relying on stale considerations. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category.

Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.").

The remainder of Sosa-Escoto's arguments are not supported by the record. He argues that IJ Addicott "claimed the Court Memorandum and Order does not indicate a burden has been shifted to the Respondent and proceeded with the hearing with Sosa-Escoto bearing the burden." (Doc. 17, Reply Br. at ECF p. 4). The record reflects that IJ Addicott definitively placed a clear and convincing burden on DHS, as noted above. (Doc. 16-3 at ECF p. 11). Insofar as the petitioner complains about the outcome of the hearing based on the weight given to his criminal history, he is advancing improper abuse of discretion arguments. Any further weighing of the evidence by the court would encroach on the limits imposed by § 1226(e). Noting that limitation, Sosa-Escoto received a fundamentally fair bond hearing that did not itself violate his due process rights.

Therefore, for the reasons set forth above, it is hereby **ORDERED** that:

1) Julio Cesar Sosa-Escoto's motion to enforce, (Doc. 13), is **DENIED**; and

2) The Clerk of Court is directed to close this case.

BY THE COURT:

Date: 11/9/26

JUDGE JULIA K. MUNLEY
United States District Court